RECEIVED
USDC, WESTERN DISTRICT OF LA.
TONY R. MOORE, CLERK
DATE 7/13/10
BY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| KAY HUTCHISON, ET AL. | CIVIL ACTION NO. 09-0715 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CHARLES MCDONALD, ET AL. | MAG. JUDGE KAREN L. HAYES |

## RULING

Pending before the Court is a Motion for Summary Judgment [Doc. No. 9] filed by Defendants Richland Parish Sheriff Charles McDonald and Deputy Jerry Graham ("Graham"). For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

### I. FACTUAL AND PROCEDURAL HISTORY

On May 1, 2008, Richland Parish Coroner Dr. David Thompson issued a protective order to have Larry Durr ("Durr") taken into custody and transported to Glenwood Hospital for examination by a physician. The protective order stated that Durr was suicidal, hearing voices, and experiencing paranoia.

Dr. Thompson gave Graham the protective order and told him that Durr had psychological issues and was contemplating suicide. Dr. Thompson also told Graham that Durr might physically fight an attempt to take him away from his house if his daughter was not present. Graham went to Durr's house and knocked on his door several times. No one responded. After Graham walked back to his patrol car, a white male appeared approximately seventy-five (75) feet away and, after questioning, identified himself as Durr. Graham told Durr about the protective order and that he had come to take Durr to the hospital. Durr responded that he needed to get his shoes from inside the house. Graham responded that the hospital probably had everything he needed. Nevertheless, Durr

entered the house, then shot and killed himself. Prior to Durr's suicide, Graham and Durr were never closer than twenty-five (25) feet from each other.

On April 30, 2009, Durr's daughter and son, Plaintiffs Kay Hutchison and Larry E. Durr, individually and on behalf of Durr's estate, filed suit against Defendants alleging federal claims under 42 U.S.C. §§ 1983 and 1988 and state law claims of negligence.

On May 12, 2010, Defendants filed a Motion for Summary Judgment. [Doc. No. 9]. On June 21, 2010, Plaintiffs filed a memorandum in opposition. [Doc. No. 15]. On July 1, 2010, Defendants filed a reply. [Doc. No. 16].

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical

doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. 42 U.S.C. §§ 1983 and 1988

In their Complaint, Plaintiffs allege claims under § 1983 arising from alleged violations of the Eighth[1] and Fourteenth[2] Amendments to the United States Constitution. Plaintiffs also allege that they should be awarded attorney's fees under § 1988 as a prevailing party in an action to enforce provisions under § 1983.

At the outset, the Court notes that "[t]he cruel and unusual punishment clause of the Eighth Amendment applies only in criminal actions, following a conviction." *Palermo v. Rorex*, 806 F.2d 1266, 1271 (5th Cir. 1987) (citation omitted). Plaintiffs do not allege, nor is the Court aware of, any facts indicating that Durr was ever convicted or otherwise a defendant in a criminal action when he committed suicide. Therefore, Plaintiffs have failed to state a claim as a matter of law arising from alleged violations of the Eighth Amendment, and Defendants' Motion for Summary Judgment on this claim is GRANTED.

Plaintiffs also allege that Defendants violated their duties owed to Durr under the Fourteenth Amendment to prevent Durr from committing suicide. Defendants assert, among other arguments, that Durr was not in custody, and, therefore, Defendants did not owe him a duty under the Fourteenth

---

[1] The Eight Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII.

[2] The Fourteenth Amendment states, in pertinent part: "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. Amend. XIV.

Amendment.

"Ordinarily, a state official has no constitutional duty to protect an individual from private violence." *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002) (citation omitted). The United States Supreme Court has explained:

> [N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989).

"However, *DeShaney* recognized that in certain *limited circumstances* the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Beltran v. City of El Paso*, 367 F.3d 299, 307 (5th Cir. 2004) (citations and quotations omitted). "[I]t is the State's affirmative act of restraining the individual's freedom to act on his own behalf-through incarceration, institutionalization, or other similar restraint of personal liberty-which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect . . . liberty interests against harms inflicted by other means." *DeShaney*, 489 U.S. at 200. In other words, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and well-being." *Id.*

The parties agree that in order for a person to be in custody that person must be physically restrained or submit to an officer's show of authority. *See California v. Hodari D.*, 499 U.S. 621, 625-26 (1991). Plaintiffs do not contend that Durr was physically restrained but do contend that he

was in custody because he submitted to Graham's show of authority. Therefore, whether Durr was in custody at the time he committed suicide turns on whether Durr submitted to Graham's show of authority. The uncontroverted facts indicate that Durr did not. Durr initially indicated that he would comply with the protective order, but he entered the house after Graham told him it was unnecessary to retrieve his shoes. The fact that he then committed suicide indicates that he never intended to, nor did he, submit to Graham's authority. Durr was not in custody, and Defendants did not owe him a duty under the Fourteenth Amendment.

Alternatively, Plaintiffs argue that Durr should be treated as a pre-trial detainee at the time he committed suicide. In *Partridge v. Two Unknown Police Officers of the City of Houston*, the Fifth Circuit held that, pursuant to the Fourteenth Amendment, a state has "a duty, at a minimum, not to be deliberately indifferent to [a pretrial detainee's] serious medical needs," including psychological and psychiatric treatment. 791 F.2d 1182, 1187 (5th Cir. 1986). However, pre-trial detainees are "persons who have been charged with a crime but who have not yet been tried on that charge." *Bell v. Wolfish*, 441 U.S. 520, 523 (1979). There is no evidence Durr had been charged with a crime at the time he committed suicide. Plaintiffs have otherwise failed to cite authority for the proposition that a person identified by a protective order but not charged with a crime is equivalent to a pre-trial detainee for purposes of the Fourteenth Amendment.[3]

Because Defendants did not owe Durr a duty under the Fourteenth Amendment, Defendants' Motion for Summary Judgment on Plaintiffs' claims under § 1983 arising from alleged violations of the Fourteenth Amendment is GRANTED. As Plaintiffs are not prevailing parties, Defendants'

---

[3] Because the Court finds that Durr was not in custody, the Court need not decide whether Defendants were deliberately indifferent to Durr's serious medical needs.

Motion for Summary Judgment on Plaintiffs' claims for attorney's fees under § 1988 is also GRANTED.

### C. Negligence

In their Complaint, Plaintiffs also allege state law claims of negligence. Defendants assert that Graham did not owe Durr a duty under state law, but, even if he did, he did not breach such a duty. Defendants also assert that Graham's conduct was not a substantial factor or a cause-in-fact of Durr's death.

State law claims of negligence arise under Louisiana Civil Code articles 2315 and 2316. *See St. Hill v. Tabor*, 542 So.2d 499, 501 (La. 1989). "[U]nder these articles the elements of a cause of action are fault, causation and damage." *Id.* "The standard negligence analysis . . . employ[ed] in determining whether to impose liability . . . is the duty/risk analysis . . . ." *Mathieu v. Imperial Toy Corp.*, 94-C-0952 (La. 11/30/94); 646 So.2d 318, 321.

> Under a duty/risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

*Id.* at 322 (citations omitted).

"Cause-in-fact usually is a 'but for' inquiry which tests whether the [harm] would or would not have happened but for the defendant's substandard conduct." *Boykin v. Louisiana Transit Co., Inc.*, 96-C-1932 (La. 3/4/98); 707 So.2d 1225, 1230. However, "[w]here there are concurrent causes of the [harm] which nevertheless would have occurred in the absence of one of the causes, the proper

inquiry is whether the conduct in question was a substantial factor in bringing about the [harm]." *Id.* at 1230 n.10.

In ruling on a motion for summary judgment, the Court must view the facts in the light most favorable to the non-movant. In that light, one can infer from the undisputed facts that Durr, while experiencing paranoia and having suicidal thoughts, killed himself because Graham revealed that he was being taken to the hospital, and that Graham's revelation was a substantial factor that caused Durr to commit suicide. One may also infer that Durr would not have committed suicide if Graham restrained him, did not tell him where he was being taken, or took some other course of action. Therefore, the Court finds a genuine issue of material fact whether Graham's conduct was a substantial factor or a cause-in-fact of Durr's death.

"After determining causation, the court must also determine what was the duty imposed on defendant, . . . whether the risk which caused the [harm] was within the scope of that duty," and whether such a duty existed. *Gresham v. Davenport*, 537 So.2d 1144, 1146 (La. 1989). "The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide." *Id.* (citation omitted). The Louisiana Supreme Court has held that:

> Governmental agencies in the performance of governmental functions may be subjected to the imposition of certain duties, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty. The determination of which may result in liability for damages to those injured by a risk contemplated by that duty. The determination of whether a particular duty should be imposed on a particular governmental agency is a policy question. It is [the Court's] role to determine whether there is any jurisprudential or statutory rule or policy reason why, under the facts and circumstances of this case, the state would owe a duty to plaintiff to compensate him for his injuries.
>
> Generally, a police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action. His authority must at all times be exercised in a reasonable fashion and he must act as a reasonably prudent

man under the circumstances. Officers are held to choosing a course of action which is reasonable under the circumstances.

*Hardy v. Bowie*, 98-CC-2821 (La. 9/8/99); 744 So.2d 606, 614 (quotations and citations omitted).

The Court finds that under Louisiana jurisprudence Graham owed Durr a duty to choose a course of action that was reasonable under the circumstances. Whether Graham breached that duty is a separate inquiry.

Graham was aware that Durr had psychological problems, was suicidal, and would physically fight an attempt to take him away if his daughter was not present. After Graham informed Durr that he was there to take him away, Graham made no attempt to restrain him, follow him closely, or keep him in his line of sight. Together, these facts create a genuine issue of material fact whether Graham breached his duty to choose a course of action that was reasonable under the circumstances.

Defendants' Motion for Summary Judgment as to Plaintiffs' state law claims of negligence is DENIED.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 9] is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims under 42 U.S.C. §§ 1983 and 1988 are DISMISSED WITH PREJUDICE. Defendants' Motion for Summary Judgment as to Plaintiffs' state law claims of negligence is DENIED and those claims remain pending.

MONROE, LOUISIANA, this 13 day of July, 2010.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE